**BUSHKIN ASSOCIATES, INC., et al.,**
**Plaintiffs, Appellees,**

v.

**RAYTHEON COMPANY,**
**Defendant, Appellant.**

No. 89-2093.

United States Court of Appeals,
First Circuit.

Heard May 10, 1990.

Decided June 8, 1990.

James S. Dittmar, with whom Leonard G. Learner, Kathleen B. Rogers and Widett, Slater & Goldman, were on brief, Boston, Mass., for defendant, appellant.

F. Lee Bailey, with whom Kenneth J. Fishman, Daniel Patrick Leonard, and Bailey, Fishman & Leonard, were on brief, Boston, Mass., for plaintiffs, appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiffs–Appellees Bushkin Associates, Inc., et al. were awarded $600,000 by a jury against defendant-appellant Raytheon Company on a quantum meruit claim. The district court added $706,191.70 in prejudgment interest, resulting in a total judgment against Raytheon of $1,306,191.70. Raytheon has appealed the interest award. There are two issues to be decided: whether any prejudgment interest at all should have been added to the verdict, and, if so, what is the date from which prejudgment interest should be computed. We affirm.

## PROCEDURAL HISTORY

This case has a long and tortuous procedural history. Bushkin filed a complaint against Raytheon in federal district court on April 28, 1981, alleging breach of an oral fee contract for services rendered relative to the merger of Beech Aircraft Corporation and Raytheon, a quantum meruit claim for the reasonable value of the services, and violations of Mass.Gen.Laws Ann. ch. 93A. The complaint was dismissed by the district court on September 2, 1983 on the ground that under New York law,[1] which the district court found applicable, the alleged oral contract and the quantum meruit claim were void and unenforceable. *Bushkin Associates, Inc. v. Raytheon Co.*, 570 F.Supp. 596 (D.Mass.1983).

On appeal we certified questions of law to the Supreme Judicial Court of Massachusetts. It held that Massachusetts law, not New York law, was applicable to the alleged oral contract and that the complaint did not state a cause of action under Mass. Gen.Laws Ann. ch. 93A. *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622,

---

1. The New York Statute of Frauds, New York    General Obligations Law, § 5–701.

473 N.E.2d 662 (1985). We then remanded the case for trial in the district court. *Bushkin Associates, Inc. v. Raytheon Co.,* 760 F.2d 251 (1st Cir.1985).

Trial commenced in November 1985. After Bushkin had presented its evidence, the district court directed a verdict for Raytheon on all counts. Bushkin appealed. We reversed, holding that the evidence on breach of the alleged oral contract and on the quantum merit claim was sufficient for jury determination. The case was again remanded for trial. *Bushkin Associates, Inc. v. Raytheon Co.,* 815 F.2d 142 (1st Cir.1987).

Prior to the start of the scheduled trial, the district court disqualified Bushkin's counsel because they had telephonically interviewed jurors who had sat on the case held in November, 1985. The disqualification order was appealed. We affirmed the district court. *In re Bushkin Associates, Inc.,* 864 F.2d 241 (1st Cir.1989).

Bushkin retained new counsel and trial proceeded in July of 1989. The jury returned its verdict on July 12 by its answers to the following four interrogatories.

1. Do you find that the plaintiffs have established by a preponderance of the evidence that the defendant entered into an express oral contract with the plaintiffs under the terms of which contract defendant would pay the plaintiffs a fee for plaintiffs' help in defendant's acquisition of or merger with Beech Aircraft Corporation?

Answer YES or NO.

NO

2. Do you find that the plaintiffs have established by a preponderance of the evidence that the defendant entered into an implied in fact contract with the plaintiffs under which contract defendant would pay the plaintiffs a reasonable fee for plaintiffs' help in defendant's acquisition of or merger with Beech Aircraft Corporation?

Answer YES or NO.

NO

5. Do you find that the plaintiffs have established by a preponderance of the evidence that the defendant received a benefit from the information or services provided by the plaintiffs to the defendant with respect to defendant's acquisition of or merger with Beech Aircraft Corporation?

Answer YES or NO.

YES

6. What amount of fee do you find that the plaintiffs have established by a preponderance of the evidence to be necessary to compensate the plaintiffs either in accordance with the terms of an express oral contract, or as the reasonable fee in an implied in fact contract, *or for the reasonable value of the information or services provided by the plaintiffs to the defendant?*

$600,000

(Six Hundred Thousand Dollars)

(Emphasis added).

The district court issued a written opinion explaining its reasons for finding that prejudgment interest should be added to the verdict. *Bushkin Associates, Inc. v. Raytheon Co.,* 717 F.Supp. 18 (D.Mass. 1989). This appeal followed the denial of Raytheon's post-trial motions to alter or amend the judgment by deleting the interest entirely or reducing it.

## THE FACTS

We recount only those facts necessary to understand the issues. Bushkin Associates, Inc. is an investment banking firm in New York specializing in mergers and acquisitions. Its principal officer and major actor in this case is Merle J. Bushkin. Bushkin's relationship with Raytheon began in 1971, prior to his forming the investment firm in August 1972. Bushkin provided merger and acquisition information to Raytheon. Between 1972 and 1978 Bushkin gave Raytheon information about 65 different business entities for acquisition consideration.

In 1973 Bushkin investigated the possibility of the acquisition of Beech Aircraft Corporation by Ethyl Corporation. After a year of investigation and negotiations, the acquisition fell through. Bushkin, of course, had obtained a great deal of infor-

mation about Beech during the negotiations.

In 1974 Bushkin inquired of Raytheon executives if they were interested in acquisitions in the aviation field. The replies did not reject such an acquisition outright, but they were not encouraging. In·January of 1975, Bushkin approached Robert L. Seaman, vice-president for planning of Raytheon and the person who screened all proposed acquisitions. Bushkin specifically proposed Beech for acquisition by Raytheon. Negotiations continued between Bushkin and Seaman for six months during which time Seaman obtained a great deal of information from Bushkin about Beech. On July 29, 1975, Seaman told Bushkin that Raytheon's chairman of the board, Thomas L. Phillips, was not interested in Beech.

In the fall of 1975, Bushkin was working with Raytheon on another potential acquisition. He met with Phillips and raised the subject of Raytheon acquiring Beech. According to Bushkin, Phillips said he was not interested. Phillips testified that he could not recall this conversation.

In August, 1976, Raytheon entered into a consulting agreement for mergers and acquisitions with Lonsdale Enterprises, Inc. On November 25, 1976, Lonsdale proposed that Raytheon acquire Beech. In February, 1977, Bushkin was working on another potential acquisition for Raytheon. Bushkin testified that he again suggested to Phillips that he consider acquisition of Beech and that Phillips responded by saying that he had no interest in general aviation. Phillips testified that he did not recall such a discussion.

A merger agreement was entered into between Raytheon and Beech in November, 1979, effective February 8, 1980. The value of the transaction was put at $816 million. Raytheon paid fees of $500,000 to one Angus MacDonald and $600,000 to Lonsdale.

In early October, 1979, Bushkin read in a newspaper about the impending merger between Beech and Raytheon. On October 5, he wrote Phillips stating, *inter alia*, "I trust that our fee agreement will be honored." Raytheon refused to pay Bushkin anything and this lawsuit resulted.

## PREJUDGMENT INTEREST ON A QUANTUM MERUIT AWARD

### A. *Massachusetts Law*

█ The first issue is whether prejudgment interest should be added to a recovery in quantum meruit. The applicable Massachusetts statute states:

In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the ·date of the commencement of the action.

Mass.Gen.Laws Ann. ch. 231, § 6C (West 1990).

Before we begin our exegesis of the Massachusetts cases, we point out that in our opinion remanding the case for trial, 815 F.2d 142, we assumed that quantum meruit was a variation of a contract claim. In discussing the viability of the quantum meruit claim, we held that plaintiffs "were certainly entitled to plead in the alternative, arguing a quantum meruit theory as well as an express contract theory." 815 F.2d at 149. We then stated:

More importantly, restitution on quasi-contractual grounds often enters into the remedial calculus in a contractual context. *See generally* Perillo, *Restitution in a Contractual Context*, 73 Colum.L. Rev. 1208 (1973). It is established that a party to a contract may have the right to a quasi-contractual remedy when the other party has breached. *See, e.g., Salamon v. Terra*, 394 Mass. 857, 477 N.E.2d 1029, 1032 (1985); Restatement of Restitution, § 107(1) (1936).

815 F.2d at 149–50 (footnote omitted).

We do not suggest that this became "the law of the case," but we do assume that

the court below and the parties were familiar with our opinion. We also note that neither party objected to the definition of quantum meruit given in the court's instructions to the jury: "a contract implied in law, or a quasi-contract."[2]

Entitlement to prejudgment interest under Mass.Gen. Laws Ann. ch. 231, § 6C on a quantum meruit award is an open question in the Commonwealth.[3] *See Jenney v. Airtek Corp.*, 402 Mass. 152, 521 N.E.2d 388, 389 n. 2 (Mass.1988) (court did not reach claim that interest should not be added to a quantum meruit award); *Acme Plastering v. Boston Housing Authority*, 25 Mass.App.Ct. 985, 521 N.E.2d 418, 420 (1988) (denial of a petition for rehearing did not constitute a decision on the merits of a claim to interest on a judgment in quantum meruit under Mass.Gen. Laws Ann. Ch. 231, § 6C).

The rules of statutory interpretation in Massachusetts are not different than elsewhere.

The familiar rule of statutory construction requires us to interpret a law so as to effectuate the intent of the Legislature in enacting it. The intent of the Legislature is to be determined primarily from the words of the statute, given their natural import in common and approved usage, and with reference to the conditions existing at the time of enactment. This intent is discerned from the ordinary meaning of the words in a statute considered in the context of the objectives which the law seeks to fulfil. Wherever possible, we give meaning to each word in the legislation; no word in a statute should be considered superfluous.

*International Org. of Masters v. Woods Hole Steamship Auth.*, 392 Mass. 811, 467 N.E.2d 1331, 1332 (1984) (citations omitted).

We now examine the pertinent Massachusetts cases for a signal as to whether quantum meruit is or is not encompassed by the prejudgment interest statute.

In *Conway v. Electro Switch Corp.*, 402 Mass. 385, 523 N.E.2d 255 (1988), one of the questions we certified to the Supreme Judicial Court was whether, in an unlawful discharge case, prejudgment interest should be added to "front pay." In deciding that it should not be added, the court stated:

We begin our answer to the question dealing with interest with the fundamental proposition that interest is awarded to compensate a damaged party for the loss of use or the unlawful detention of money. This is the primary purpose of both G.L. c. 231, § 6B and § 6C, and the underlying common law rule. *See Sterilite Corp. v. Continental Casualty Co.*, 397 Mass. 837, 841, 494 N.E.2d 1008 (1986) (considering G.L. c. 231, § 6C).

*Id.* 523 N.E.2d at 258.

The question in *Sterilite Corp. v. Continental Cas. Co.*, 397 Mass. 837, 494 N.E.2d 1008 (1986), was the appropriate way to calculate prejudgment interest under the statute. *Id.* at 1009. In the course of its opinion, the court stated that the intent of the legislature was to do away with the common law distinction between liquidated and unliquidated damages. *Id.* at 1010. It also held that the primary purpose of the statute "is designed to compensate a dam-

---

**2.** The complete instruction stated:

The third theory of liability in this case is called contract implied in law, or quasi-contract. Quasi contracts are not really true contracts at all for they do not depend upon a finding of assent between the parties, nor do they depend upon a finding of assent between the parties, nor do they depend upon a finding of promises, either express or implicit.

Rather, the law imposes a quasi-contract, or contract implied in law, when it appears as though one party has been unjustly enriched at the expense of another or that one party has been unjustly deprived of compensation earned.

**3.** The question is unlikely to be decided by the Massachusetts courts because after the date of the commencement of this action, Mass.Gen.L. ch. 231, § 6H was enacted. It provides for prejudgment interest "[i]n any action in which damages are awarded."

We have decided against certification for three reasons: (1) our reluctance to certify what would be for the Supreme Judicial Court a hypothetical question; (2) the protracted history of this case; and (3) both parties are opposed to certification.

aged party for the loss of use or unlawful detention of money." *Id.* at 1011 (quoting *Perkins School for the Blind v. Rate Setting Comm'n*, 383 Mass. 825, 423 N.E.2d 765, 772 (1981).

In *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 494 N.E.2d 374 (1986), the court discussed the theory of quantum meruit:

> Quantum meruit is a theory of *recovery*, not a cause of action. It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself. Recovery under this theory is derived from the principles of equity and fairness and is allowed where there is substantial performance but not full completion of the contract. See, generally, 5 S. Williston, Contracts § 805 (3d ed. 1961). In a case involving an unenforceable contract, we allowed quantum meruit recovery, basing our reasoning on the theory of unjust enrichment. *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029 (1985). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.*, quoting Restatement of Restitution § 1 (1937).

*Id.* 494 N.E.2d at 377. It is also to be noted that the judgment below, which was affirmed, had prejudgment interest and costs added to it. *Id.* at 375. The court did not discuss prejudgment interest in its opinion.

In *Salamon v. Terra*, 394 Mass. 857, 477 N.E.2d 1029 (1985), the court stated:

> A quasi contract or a contract implied in law is an obligation created by law "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.... [C]onsiderations of equity and morality play a large part ... in constructing a quasi-contract...." 1 A. Corbin, Contracts § 19 (1963). It "is not really a contract, but a legal obligation closely akin to a duty to make restitution." *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C.Cir.1973). "A person who has been unjustly enriched at the expense of

another is required to make restitution to the other." Restatement of Restitution, § 1 (1937). The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party. *See U.S. Controls Corp. v. Windle*, 509 F.2d 909, 912 (7th Cir.1975); 1 A. Corbin, Contracts § 19A (Kaufman Supp.1984).

*Id.*, 477 N.E.2d at 1031.

We conclude our canvass of Massachusetts cases on this issue by noting that in an action of quantum meruit for legal services, where there was no written fee agreement, prejudgment interest from the date of the suit was added to the damages award. *Mulhern v. Roach*, 398 Mass. 18, 494 N.E.2d 1327, 1330 (1986).

Our analysis of the Massachusetts cases convinces us that quantum meruit is encompassed by the prejudgment interest statute. There are two themes running through the cases that lead to this conclusion: the contractual setting of quantum meruit claims, and the primary objectives of the statute.

Most quantum meruit claims arise in a contractual context, as did this one. The Supreme Judicial Court has held that a claim for damages under the contract and a quantum meruit claim "have as a common basis the contract itself." *J.A. Sullivan Corp.*, 494 N.E.2d at 377. The definition of quantum meruit as "a contract implied in law" and/or "a quasi-contract" emphasizes its contractual setting. The question is not how quantum meruit is defined or classified by legal scholars and jurists but whether it is within the plain and ordinary meaning of the statutory words, "[i]n all actions based on contractual obligations."

The two primary objectives of the statute, as found by the Massachusetts courts, embrace quantum meruit claims. In determining legislative intent, Massachusetts law requires that we look to "the ordinary meaning of the words in a statute considered in the context of the objectives which the law seeks to fulfill." *International Org. of Masters*, 467 N.E.2d at 1332. The primary purpose of the prejudgment interest statute is to "compensate a dam-

aged party for the loss of use or the unlawful detention of money." *Conway v. Electro Switch Corp.*, 523 N.E.2d at 250. Here the plaintiffs have not received compensation for services rendered more than 10 years ago. Another objective of the legislature in enacting the statute was to eliminate the common law distinction between liquidated and unliquidated damages. *Sterilite Corp.*, 494 N.E.2d at 1010. Quantum meruit claims are usually unliquidated, as this one was.

Finally, we think it significant that in two cases, *J.A. Sullivan*, 494 N.E.2d 374, and *Mulhern*, 494 N.E.2d 1327, prejudgment interest was added to quantum meruit awards by the trial court. In each instance, the judgment of the trial court was affirmed. Although the question of prejudgment interest was not discussed in either case by the Supreme Judicial Court, we do know that the prejudgment interest statute has been applied to quantum meruit awards by Massachusetts trial courts in two cases.

Appellant's most compelling argument is that because plaintiffs' claims based on an express oral contract and an implied in fact contract were rejected by the jury, its quantum meruit claim was not based on a contractual obligation. There are two answers to this. First, while different in some ways, Bushkin's quantum meruit claim was generically, or categorically, related to its contract claims. In most contract cases, a jury's finding that two parties entered into an express or implied contract constitutes a statement that the two parties engaged in lawful conduct which created a duty of performance on each side. Similarly, a jury's finding that one party may recover on a quantum meruit claim against another party is, in effect, a statement that one party engaged in lawful conduct which created a duty of performance for the other party—in this case Raytheon. Unlike a tort claim sounding in deceit or fraud, a quantum meruit claim does not rest on a transaction tainted by wrongdoing which gives rise to a legal obligation to pay. Rather, like a contract claim a quantum meruit claim rests on a completely lawful transaction that is found to create a duty of performance—typically,

payment. Thus, the quantum meruit claim is a kind of first cousin to a claim based on contract.

Second, because of the way the Massachusetts cases treat quantum meruit—as a contract related claim—we do not think that the legislature intended to distinguish between a quantum meruit claim based on partial performance of contract and one brought as an alternative to the main contract claim. Clearly a quantum meruit claim based on substantial performance but not full completion of the contract, *see J.A. Sullivan Corp.*, 494 N.E.2d at 377, is encompassed by the prejudgment interest statute. It would be cutting it too fine to find that the legislature intended to distinguish between quantum meruit claims based on partial performance of a contract and those brought as an alternative to the contract claim.

Appellant also argues that because quantum meruit claims fall within Mass.Gen.L. ch. 231, § 6H, this shows that the legislature did not intend to include quantum meruit within § 6C. Section 6H provides:

> In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B to be determined from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law.

There is no doubt that a quantum meruit action comes within the phrase, "any action in which damages are awarded," but that does not show that the legislature did not intend § 6C to encompass quantum meruit claims. Appellant has pointed to nothing by way of legislative history or case law, and we have found none, indicating that quantum meruit was one of the actions the legislature had in mind when it enacted § 6H. Prior to the passage of § 6H, prejudgment interest was authorized in tort and contract actions (§§ 6B and 6C). Section 6H extends that to "any action in which damages are awarded." That is all it does; it has no bearing on the issue before us.

## B. *The Laws In Other Jurisdictions*

Because of the importance of the issue to the parties, we have reviewed the law in those jurisdictions that have statutes comparable to the prejudgment interest statute of Massachusetts. The pertinent section of the California statute provides:

Every person who is entitled under any judgement to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

Cal.Civ.Code § 3287(b) (West 1990).

The California cases involving the question of whether prejudgment interest should be added to a quantum meruit award have consistently held that the statute mandates the addition of prejudgment interest. *George v. Double D Foods, Inc.,* 155 Cal.App.3d 36, 201 Cal.Rptr. 870 (1984); *Zalk v. General Exploration Co.,* 105 Cal. App.3d 786, 164 Cal.Rptr. 647 (1980); *Worthington Corp. v. El Chicote Ranch Properties, Ltd.,* 255 Cal.App.2d 316, 63 Cal. Rptr. 203 (1967).

New York has a statute which states: Action in Which Recoverable: Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y.Civ.Prac. L. & R. § 5001(a) (West 1990). The New York cases we have examined hold that prejudgment interest adheres to an award in quantum meruit. *Govern & McDowell v. McDowell & Walker, Inc.,* 75 A.D.2d 979, 428 N.Y.S.2d 367 (1980); *Brent v. Keesler,* 32 A.D.2d 804, 302 N.Y.S.2d 349 (1969).

The pertinent part of the North Carolina statute provides:

Contracts: In an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach. The fact finder in an action for breach of contract shall distinguish the principal from the interest in the award, and the judgment shall provide that the principal amount bears interest until the judgment is satisfied.

N.C.Gen.Stat. § 24–5(a) (West 1990). The cases in North Carolina hold that prejudgment interest should be added to a quantum meruit award. *Thompson–Arthur Paving Co. v. Lincoln Battleground Assoc., Ltd.,* 95 N.C.App. 270, 382 S.E.2d 817 (1989); *Environmental Landscape Design Specialist v. Shields,* 75 N.C.App. 304, 330 S.E.2d 627 (1985). This rule is of long standing and predates the statute. *See Thomas v. Piedmont Realty and Dev. Co.,* 195 N.C. 591, 143 S.E. 144 (1928) (prejudgment interest was allowed on plaintiff's quantum meruit recovery for services performed as a broker); *Perry v. Norton,* 182 N.C. 585, 109 S.E. 641 (1921) (interest was allowed in a suit based on the equitable principles of quantum meruit).

The last state we have considered is Texas. Its statute provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (West 1990). The Texas cases, as with those in the other states, hold that interest attaches to a quantum meruit award. *McDaniel v. Tucker,* 520 S.W.2d 543 (Texas 1975); *Davidson v. Clearman,* 391 S.W.2d 48 (Texas 1965).

The case law in these four jurisdictions buttresses our holding that under Massachusetts law prejudgment interest would be added to a quantum meruit award. We turn to the next issue.

## THE DATE FROM WHICH PREJUDGMENT INTEREST SHOULD BE COMPILED

■ Appellant argues that prejudgment interest should run only from the date of filing suit. It contends that Bushkin's let-

**18**

ter of October 5, 1979, was not a demand within the meaning of § 6C, and that no other demand was made.

We do not determine whether the letter of October 5, 1979, met the demand requirements of the statute because before the case was submitted to the jury the parties stipulated "that a demand by Bushkin was first made of Raytheon on October 5, 1979." Prior to the stipulation being made, the parties had examined the proposed verdict form and counsel for plaintiffs stated: "I think it's excellent, but I think there's a requirement unless we can stipulate that the jury find on what day Bushkin demanded relief." The stipulation followed.

Plaintiffs' counsel was correct about Massachusetts law. In *Deerskin Trading Post v. Spencer Press*, 398 Mass. 118, 495 N.E.2d 303 (1986), the court held:

> Under G.L. c. 231, § 6C, prejudgment interest is to be calculated from the date of the breach or demand, if established. If the date of breach or demand is not established, prejudgment interest is to be calculated from the date of commencement of the action. Establishing the date of breach or demand is a determination for the trier of fact, and, where trial has proceeded before a jury, neither the judge nor an appellate court can make such a determination. *Karen Constr. Co. v. Lizotte, supra*, 396 Mass. [143] at 149, 484 N.E.2d 1011. [(1985)]

*Id.* 495 N.E.2d at 308.

Appellant's argument that the stipulation "was a mere stipulation of fact, not a concession of law," and that it be construed to apply to the contract claims only, is disingenuous. The stipulation was not limited or circumscribed in any way. That the case was decided differently than defendant anticipated is not a reason for restricting the stipulation *ex post facto*.

At common law prejudgment interest in a contract case ran from the date the action was commenced if the damages were unliquidated and from the date of the demand, if liquidated. *Sterilite Corp.*, 494 N.E.2d at 1010. "The enactment of G.L. c. 231, § 6C, changed the common law's concern for the form of damages into a concern for the

date of the breach or demand." *Id.* (footnote omitted). Because we have found that the prejudgment interest statute encompasses quantum meruit claims, it follows that any demand for payment covers that claim as well as the contract claims. This is neither unfair nor unjust, nor does it amount to a windfall to the plaintiffs. The services rendered by Bushkin were performed before the date of the demand, October 5, 1979. The jury found that "the reasonable value of the services or information provided by the plaintiffs to the defendant," verdict question no. 6, was $600,000. One of the primary purposes of the statute is "to compensate a damaged party for the loss of use ... of money." *Conway v. Electro Switch Corp.*, 523 N.E.2d at 258. We agree with the district court that the demand date stipulated, October 5, 1979, is the date from which interest should be computed.

We have carefully considered all of appellant's well stated and skillfully argued contentions and find them unavailing.

*Affirmed.* Costs awarded to appellees.